IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMI ABOULOH,　　　　　　　　　　： | |
| 　　　Plaintiff,　　　　　　　　　　： | |
| 　　　　　　　　　　　　　　　　　　： | |
| v.　　　　　　　　　　　　　　　　： | CIVIL ACTION NO. 25-3377 |
| 　　　　　　　　　　　　　　　　　　： | |
| LEHIGH COUNTY PRISON, et al.,　： | |
| 　　　Defendants.　　　　　　　　　： | |

MEMORANDUM

**MARSTON, J.**　　　　　　　　　　　　　　　　　　　　　　　　　September 15, 2025

*Pro se* Plaintiff Rami Abouloh asserts constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims in connection with his confinement while housed as a pretrial detainee at the Lehigh County Prison. (Doc. No. 5.) Abouloh also seeks leave to proceed *in forma pauperis*. (Doc. No. 6.) For the following reasons, the Court will grant Abouloh leave to proceed *in forma pauperis* and dismiss his Complaint. Abouloh will be permitted to file an amended complaint.

I.　　FACTUAL ALLEGATIONS[1]

Abouloh names the following Defendants in his Complaint: "John Doe (Property Room Officer),"[2] John Doe #1, John Doe #2, John Doe #3, C/O Bennet, Inmate Joseph Sydum, Lehigh County Prison, and the Prison Warden. (Doc. No. 5 at 1–2.) Abouloh alleges that he was taken

---

[1] The facts are taken from Abouloh's Amended Complaint. (*See* Doc. No. 5.) Abouloh initially filed this case in the United States District Court for the Middle District of Pennsylvania, which transferred the case to this Court pursuant to 28 U.S.C. §§ 1391(b) and 1406(a). (*See* Doc. Nos. 9, 10.) The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

[2] At times, Abouloh refers to John Doe #1 and John Doe (Property Room Officer) as the same correctional officer. Based on a review of the entire Amended Complaint, the Court understands John Doe #1 to be a different Defendant than John Doe (Property Room Officer).

into custody at the Lehigh County Prison on July 5, 2023, where he remained awaiting trial.[3] (*Id*. at 3.) At some point during Abouloh's stay at the prison, John Doe (Property Room Officer), who "worked as the property room officer" and who was "responsible for securing inmates' incoming property," released Abouloh's property to an unknown individual. (*Id*. at 1–3.) Abouloh did not sign the required release of property form and did not otherwise authorize the release of his property to another person. (*Id*. at 3.) The property consisted of jewelry, $5000 in cash, and a memory card that contained video evidence allegedly exculpating Abouloh of the crimes of which he was convicted. (*Id*.) Abouloh alleges that another inmate at the prison, Defendant Joseph Sydum, stole Abouloh's prison-issued tablet and "sent his wife messages telling her to come to the prison and get [Abouloh]'s property." (*Id*.) It is not clear whether Abouloh refers to his wife or to Sydum's wife. Abouloh further alleges that "C/O Bennet conspired with . . . Sydum and arranged this crime." (*Id*.)

Abouloh states that he filed a grievance about the "theft" of his property. (*Id*. at 2–4, 19.) He does not specifically state when he filed the grievance, however, the grievance documents attached to the Amended Complaint appear to have been filed in July and August of 2024. (*See* Doc. No. 5-1.) Abouloh alleges that after he filed the grievance, he experienced retaliation from prison officials. (Doc. No. 5 at 3–4.) Specifically, Abouloh states that, on November 17, 2023, an unnamed "prison official used excessive force" on him by stripping him naked, forcing him to stay in a cold shower for three hours, and "slam[ming] their knees in [Abouloh's] face and ribs." (*Id*. at 4.) Abouloh further alleges that "[a] few of them violently hit [him] in the face" and threw him into the shower. (*Id*.) Abouloh was then placed in a bubble cell, where he was held

---

[3] The public docket reflects that Abouloh was convicted on May 31, 2024, and sentenced on September 26, 2024. *See Commonwealth v. Abouloh*, CP-39-CR-0002632-2023. Abouloh was a pretrial detainee during all of the events described in his Amended Complaint.

2

without food or water. (*Id*.)  Abouloh states that his "heart had stopped 4 times", but he was "refused medical attention." (*Id*.)  Two days later, on November 19, 2023, Abouloh informed a prison official that he was having a panic attack "where his heart stopped." (*Id*.)  The prison official allegedly placed Abouloh in handcuffs and "began hitting him in his head and kicking him while he was down." (*Id*. at 5.)  Abouloh was taken to the medical department and told the nurses there that he needed to go to the hospital. (*Id*.)  One of the corrections officers involved in the alleged "assault" told the nurse, "'don't tell him that his face his bleeding,'" to which the nurse replied, "too late, we are recording right now." (*Id*.)  Abouloh spent the day in the hospital, after which he was placed in a bubble cell until January 11, 2024. (*Id*.)

Based on these allegations, Abouloh asserts constitutional claims pursuant to § 1983 and state law claims.  He asserts constitutional claims for excessive force, First Amendment retaliation, deliberate indifference to medical needs, due process, access to courts, conspiracy, equal protection, "tampering with the administration of justice," and "obstruction of administration of justice." (*Id*. at 6–16.)  Abouloh asserts state law tort claims for intentional infliction of emotional distress, assault and battery, "unauthorized practice of law," and state law statutory claims under the Pennsylvania Crimes Code, 18 Pa. Cons. Stat. Ann. §§ 4910 and 4911. (*Id*. at 8–11.)  For relief, Abouloh seeks money damages, an order setting aside his state court verdict, declaratory relief, and that charges be filed against "corrupt correctional officials."[4] (*Id*. at 17.)

---

[4] The Court is unable to order that charges be filed against any individual.  It is well established that private citizens have no constitutional right to compel law enforcement to arrest or prosecute an individual or entity who allegedly committed a crime.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution").

3

## II.     STANDARD OF REVIEW

The Court grants Abouloh leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Abouloh's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

Additionally, the Court must review any claims over which subject matter jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Abouloh is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

---

[5] Because Abouloh is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

### III.   DISCUSSION

#### A.   Constitutional Claims Under § 1983

Abouloh asserts constitutional claims pursuant to § 1983, the statute enabling a plaintiff to raise claims for violations of the federal constitution. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

##### 1.   Official Capacity Claims

Abouloh appears to assert claims against Defendants in both their official and their individual capacities. (*See* Doc. No. 5 at 2.) Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them, here Lehigh County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978))). " [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Nonetheless, a municipality such as Lehigh County is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. It is not enough, however, to allege the existence of a

policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Abouloh has not alleged any facts that plausibly support an official capacity claim against any of the named Defendants. He has not alleged a municipal policy or custom with respect to the alleged constitutional violations or that any such policy or custom caused the alleged constitutional violation. Instead, he alleges in conclusory terms that the Lehigh County Warden "enforced unwritten policies and customs which allowed his officers to practice unlawful conduct" in connection with the release of his property. (Doc. No. 5 at 8.) Allegations such as these, which simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible *Monell* claim. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under Monell); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under *Monell*."), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). And, as explained elsewhere in this Memorandum, *see infra* at Section III.A.6, Abouloh does not state a plausible claim with respect to the loss or release of his personal property. Thus, because there is no underlying constitutional violation, there can be no *Monell* liability. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Accordingly, the official capacity claims are not plausible and will be dismissed.

### 2.      Claims against Lehigh County Prison and its Medical Department

Abouloh also appears to assert claims against Lehigh County Prison and its Medical Department. However, neither a jail or correctional facility nor their departments are "persons" under § 1983. *See Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845–46 (3d Cir. 2011) (*per curiam*) (stating that a prison medical department is not a "person" who could be sued under § 1983). Accordingly, Abouloh's claims against the Lehigh County Prison and its Medical Department must be dismissed as not plausible. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)).

### 3.      Excessive Force Claims

Abouloh asserts excessive force claims against John Doe #1, John Doe #2, and John Doe #3, alleging that they used "a malicious and sadistic manner to cause harm without justification." (Doc. No. 5 at 6.) Because Abouloh was a pretrial detainee at the time of the events in question, the Fourteenth Amendment, not the Eighth Amendment, governs his excessive force claims. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "the force purposely or knowingly used against him

was objectively unreasonable." *Id*. at 396–97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

  Abouloh describes two instances of excessive force: one on November 17, 2023, and another on November 19, 2023. During the first incident, an unnamed prison official stripped Abouloh naked, slammed their knees into Abouloh's face and ribs, and threw him into the shower, where he remained for three hours. (Doc. No. 5 at 4.) "A few" corrections officers then "violently hit" Abouloh in the face. (*Id.*) During the second, an unnamed prison official placed Abouloh in handcuffs and "began hitting him in his head and kicking him while he was down." (*Id*. at 5.) Although Abouloh's allegations support a reasonable inference that the force used against him on both occasions was objectively unreasonable, he does not sufficiently allege the personal involvement of any of the Defendants. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207. While Abouloh is permitted to name prison officials for whom he does not have any identifying information using John Doe #1, John Doe #2, John Doe #3, etc., he cannot group all prison officials together as participating in an alleged event without articulating how each official was involved in the alleged violation of his rights. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word

8

"Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). With respect to both instances of alleged excessive force, Abouloh describes the actions of the prison officials as a group, which is insufficient to allege the personal involvement of each officer. Accordingly, the Court will dismiss Abouloh's excessive force claims without prejudice and permit him an opportunity to amend them.[6]

### 4. First Amendment Retaliation Claims

Abouloh also asserts First Amendment retaliation claims against Bennet, John Doe (Property Room Officer), John Doe #1, John Doe #2, and John Doe #3, based on allegations that these Defendants "beat" him and placed him in a bubble cell without water and food for days, in retaliation for him filing grievances about his "stolen property and stolen exculpatory evidence." (Doc. No. 5 at 7.) To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422–23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean*

---

[6] Abouloh may name prison officials for whom he lacks identifying information as John Doe #1, John Doe #2, John Doe #3, etc., but he must be specify what each John Doe Defendant did.

*W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Again, Abouloh collectively refers to defendants as engaging in retaliatory conduct without clarifying the specific basis for each Defendant's liability, which is not sufficient to state a claim. *Lawal*, 546 F. App'x at 113. Nor does Abouloh plausibly allege the requisite causal connection between a protected activity and any alleged retaliatory conduct by a Defendant. He does not state in his Amended Complaint when he learned about his missing property and when he filed grievances about that missing property. Plus, the grievances he attaches to his Amended Complaint appear to have been filed a year *after* the alleged instances of retaliatory conduct and thus cannot support a reasonable inference that defendants retaliated against him for complaining about missing property. (*Compare* Doc. No. 5 at 3–6 (alleging instances of retaliatory conduct in fall 2023), *with* Doc. No. 5-1 (showing grievances received in July and August 2024).) Without additional information, the Court cannot "draw the reasonable inference that [any named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the Court will also dismiss Abouloh's First Amendment retaliation claims without prejudice and permit him to amend these claims.

### 5. Deliberate Indifference Claims

Abouloh also asserts deliberate indifference claims against John Doe #1, John Doe #2, and John Doe #3,[7] alleging that he was having "severe medical problems" but that his "cries for help . . . went unanswered." (Doc. No. 5 at 9–10.) To state a claim based on the failure to provide medical treatment under the Fourteenth Amendment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent,

---

[7] Abouloh also asserts deliberate indifference claims against the Lehigh County Prison Medical Department; however, this Defendant was already dismissed with prejudice. *See supra* at Section III.A.2.

"unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Abouloh's deliberate indifference claims are undeveloped as pled.  He states that he complained to John Doe #1, John Doe #2, and John Doe #3 about "severe medical problems" (*see* Doc. No. 5 at 9–10), but he includes no details about the medical problems, including what they were, when and how he notified each John Doe Defendant, and how each John Doe Defendant allegedly failed to respond.  Elsewhere in the Amended Complaint, Abouloh states that his heart stopped four times, that he was refused medical attention, and that "medical staff" "denied [him] help."  (*Id*. at 4.)  Abouloh again provides no details about when these instances took place or how any named Defendant was specifically involved in denying him medical care.  Without these factual details, Abouloh does not raise a plausible inference that any named Defendant was deliberately indifferent to his serious medical needs.  Accordingly, the Court will also dismiss these claims without prejudice.

### 6. Fourteenth Amendment Property Claims against John Doe (Property Room Officer)

Abouloh asserts Fourteenth Amendment due process claims against John Doe (Property Room Officer) based on allegations that he "released" Abouloh's property (jewelry, $5000 in

11

cash, and a memory card) to an unknown person without Abouloh's authorization, and in doing so, prevented Abouloh from presenting exculpatory evidence during his criminal trial. (Doc. No. 5 at 3, 10–11.) To the extent that Abouloh asserts a due process claim based on the loss of his personal property, the claim must be dismissed. Unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A prison's grievance procedure provides an adequate postdeprivation remedy for intentional deprivations of property by prison employees. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides an adequate post-deprivation remedy). Accordingly, Abouloh's due process claim based on the loss of his property is not plausible because he had an adequate remedy for the deprivation of his property through the prison grievance system. *See, e.g.*, *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (*per curiam*) (affirming dismissal of due process claim and stating that "[t]he prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy).

To the extent that Abouloh asserts a claim against John Doe (Property Room Officer) for denial of his access to the courts based on allegations that the lost memory card contained exculpatory evidence that would have proven his innocence, the claim must also be dismissed.[8]

---

[8] "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "However, prisoners may only proceed on access-to-

When a plaintiff seeks damages in a civil rights lawsuit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Courts commonly refer to this as the "*Heck* bar," *see Wallace v. Kato*, 549 U.S. 384, 385 (2007), which prevents plaintiffs from bringing claims, the success of which would render a sentence or conviction invalid, unless the plaintiff can show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 486–87; *see also Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) ("Thus, a plaintiff may not sue 'for alleged unconstitutional conduct that would invalidate his or her underlying sentence or conviction unless that conviction has already been' favorably terminated." (quoting *Grier v. Klem*, 591 F.3d 672, 677 (3d Cir. 2010))).

Abouloh alleges that by releasing the memory card to an unauthorized person, John Doe (Property Room Officer) "prevented [Abouloh] from presenting exculpatory video evidence to the judge and juror," which denied him due process. (Doc. No. 5 at 10.) For relief, Abouloh seeks both money damages and that "the verdict be set aside." (*Id.* at 17.) Nowhere in his Amended Complaint does Abouloh allege that his conviction was invalidated, and his public criminal docket reflects that his conviction is still valid. Thus, his claim for money damages

---

courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.* "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'— that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

based on the alleged loss of exculpatory evidence is barred by *Heck* because it necessarily implies the invalidity of the underlying conviction. *See Ortiz*, 747 F. App'x at 77–78 (affirming dismissal of due process claim based on allegations that the defendants suppressed exculpatory evidence because claim is barred by *Heck*); *Miller v. Commonwealth of Pa.*, 588 F. App'x 96, 97 (3d Cir. 2014) (*per curiam*) (affirming dismissal of state prisoner's Fourteenth Amendment claim that destruction of exculpatory evidence prevented him from proving his innocence as barred by *Heck* "[b]ecause a judgment in his favor would necessarily imply the invalidity of his conviction" and he did not "demonstrate that his conviction ha[d] been invalidated"); *Shareef v. Palko*, 839 F. App'x 766, 767 (3d Cir. 2021) (*per curiam*) (rejecting claim that the plaintiff lost his criminal trial and was denied access to the courts because a corrections officer "took all [his] lay work" and noting that claims were barred by *Heck*). The Court will dismiss Abouloh's *Heck*-barred claims without prejudice to Abouloh refiling them in a new lawsuit *in the event* his conviction is ultimately invalidated.

Abouloh's claim that his verdict be set aside must also be dismissed because the claim is not cognizable in a § 1983 action and instead must be brought in a habeas corpus petition. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Miller*, 588 F. App'x at 97 n.1 ("Relief in the form of a new trial or a release from custody indicates a challenge to 'the very fact or duration of [one's] physical imprisonment' and may be sought only through a petition for a writ of habeas corpus, not through a civil rights complaint such as the one at bar." (quoting *Preiser*, 411 U.S. at 500)). Nothing in this Memorandum should be construed to prevent Abouloh from raising his

constitutional claims about the alleged exculpatory evidence in his state criminal case or through a habeas petition.⁹ *See Rushing v. Pennsylvania*, 637 F. App'x 55, 58 n.4 (3d Cir. 2016) (*per curiam*) ("The District Court's dismissal of [the plaintiff's] § 1983 complaint should not constitute a bar to any collateral attacks by [the plaintiff] against his state proceedings.").

### 7. Conspiracy Claims

Abouloh also asserts a § 1983 conspiracy claim against Bennet, John Doe (Property Room Officer), and Sydum, based on allegations that Defendants "operated together . . . with the goal of depriving [Abouloh] of his money, exculpatory evidence and other property." (Doc. No. 5 at 11.) The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). The Court already concluded that the claims Abouloh asserts regarding his lost property, including those about any exculpatory evidence associated with that property, must be dismissed. *See supra* at Section III.A.6. And without an underlying constitutional violation, a conspiracy claim necessarily fails. *Harvard v. Cesnalis*, 973 F.3d 190, 207–08 (3d Cir. 2020). Accordingly, Abouloh's conspiracy claim must be dismissed, as he cannot allege an underlying constitutional violation in connection with his lost personal property.¹⁰ *See id.*; *see also Talley v.*

---

⁹ The Court expresses no opinion on the merits of those claims.

¹⁰ Abouloh's conspiracy claims are flawed for other reasons. There are no facts to support an inference that Sydum acted under color of state law. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d

15

*Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (*per curiam*) ("Finally, Talley's claims of . . . conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.").

### 8. Claims against Lehigh County Prison Warden

Abouloh also names the Lehigh County Prison Warden as a defendant in this action but asserts very few factual allegations about his involvement in the alleged constitutional violations. To the extent that the Warden is named simply due to his high-ranking position at the Lehigh County Prison, this is not sufficient to state a plausible claim. Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (holding that liability under § 1983 cannot be predicated on a *respondeat superior* basis); *Jutrowski*, 904 F.3d at 290 ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (internal quotations omitted)). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

---

Cir. 2011) (*per curiam*) (concluding that inmate was not a state actor). Moreover, Abouloh asserts no facts about the alleged conspiracy but instead states in conclusory terms that one existed, which is not sufficient to state a plausible conspiracy claim. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] bare assertion of conspiracy will not suffice."). Abouloh's allegation that Bennet, John Doe (Property Room Officer), and Sydum "operated together" to deprive him of his property does not support a plausible inference of conspiratorial agreement among these, or any other, Defendants.

First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  Second, a supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Abouloh asserts only that the Warden "enforced unwritten policies and customs which allowed his officers to practice unlawful conduct" in connection with violating Abouloh's constitutional rights to his personal property.  (Doc. No. 5 at 8.)  Such conclusory allegations do not support a plausible supervisory liability claim.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010) ("As mere restatements of the elements of [his] supervisory liability claims, they are not entitled to the assumption of truth.").  Plus, to the extent that the Warden is named because he was involved in denying Abouloh's grievances, such claims are also not viable because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue].").  Accordingly, the Court will dismiss Abouloh's constitutional claims asserted against the Lehigh County Prison Warden without prejudice.

**B.    State Law Claims**

Abouloh also asserts state law claims.  First, he asserts claims under two sections of the

Pennsylvania Crimes Code: 18 Pa. Cons. Stat. Ann. § 4910 (Tampering with or fabricating physical evidence) and 18 Pa. Cons. Stat. Ann. § 4911 (Tampering with public records or information).  But Pennsylvania criminal statutes generally do not provide a private case of action.  *See D'Errico v. DeFazio*, 763 A.2d 424, 430 (Pa. Super. Ct. 2000) (concluding that plaintiffs could not seek to impose civil liability based on a criminal statute alone); *see also Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Crimes Code).  Section 4910 punishes tampering with or fabricating physical evidence if the individual believes that "an official proceeding or investigation is pending or about to be instituted."  18 Pa. Cons. Stat. Ann. § 4910.  Section 4911 punishes the tampering of any government document or record.  *See* 18 Pa. Cons. Stat. Ann. § 4911.  Neither statute contains any indication that the Pennsylvania General Assembly contemplated a private right of action.  *See* 18 Pa. Cons. Stat. Ann. § 4910; 18 Pa. Cons. Stat. Ann. § 4911; *D'Errico*, 763 A.2d at 430 (declining to create a private right of action under Pennsylvania criminal statutes "[w]ithout some indication . . . that the legislature contemplated" one); *see also Stacey v. City of Hermitage*, 178 F. App'x 94, 101 (3d Cir. 2006) (*per curiam*) (affirming dismissal of private cause of action for violation of Pennsylvania criminal statutes, including, *inter alia*, 18 Pa. Cons. Stat. Ann. § 4910).  Because the statutes provide no private right of action, Abouloh's claims asserted under Sections 4910 and 4911 must be dismissed with prejudice.

With respect to his remaining tort claims, Abouloh has not properly alleged that the Court has subject matter jurisdiction over these claims.  In the absence of any federal claims, the only independent basis for jurisdiction over state law claims is 28 U.S.C. § 1332(a), which grants a

district court jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.[11]  Complete diversity is required, meaning that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); *see also Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (explaining that for complete diversity, "no plaintiff [may] be a citizen of the same state as any defendant" (citations omitted)).  An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972).

Abouloh does not allege the citizenship of the parties.  Rather, he merely provides a Pennsylvania prison address for himself and states that all Defendants are employed by the Lehigh County Prison.  This suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, Abouloh has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Abouloh leave to proceed *in forma pauperis* and dismiss his Amended Complaint in part with prejudice and in part without prejudice.  Abouloh's claims against the Lehigh County Prison and its medical department, his

---

[11] Having dismissed Abouloh's federal claims, the Court will not exercise supplemental jurisdiction over his state claims.

Fourteenth Amendment due process claims based on the loss of his personal property, and his claims asserted under 18 Pa. Cons. Stat. Ann. §§ 4910 and § 4911 will be dismissed with prejudice.[12]  His access-to-courts claim will be dismissed without prejudice to him challenging his conviction in a habeas proceeding or filing a new civil rights complaint only in the event his conviction is reversed, vacated, or otherwise invalidated.  *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).  The balance of his claims are dismissed without prejudice.  Abouloh may file a second amended complaint in the event he can allege facts to cure the defects the Court has noted regarding the claims that were dismissed without prejudice.  An appropriate Order follows, which offers additional guidance on options for proceeding.

---

[12] Abouloh also asserts duplicative claims for "Tampering with the Administration of Justice" and "Obstruction of the Administration of Justice." (Doc. No. 5 at 14, 16.)  These claims are based on the same allegations that Defendants conspired to deprive Abouloh of exculpatory evidence.  These claims will be dismissed as duplicative.

In addition, Abouloh asserts an equal protection claim based on the conclusory statement that "the conduct and actions of the correctional defendants mentioned in this [Amended] Complaint . . . constitute an equal protection of law violation." (*Id.* at 14.)  However, there are no allegations in Abouloh's Amended Complaint that support a reasonable inference that he was intentionally discriminated against based on his membership in a protected class or that he was treated differently than other similarly situated inmates.  *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016); *Tillman*, 221 F.3d at 424.  This claim will also be dismissed with prejudice.